UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SALLY KERANS | : | CASE NO. C-1-01-565 |
| | : | J. Weber |
| Plaintiff, | : | Mag. J. Sherman |
| | : | |
| v. | : | |
| | : | |
| PORTER PAINTS | : | **PLAINTIFF'S OBJECTIONS TO THE** |
| | : | **MAGISTRATE'S REPORT** |
| Defendant. | : | **AND RECOMMENDATION** |

## I. INTRODUCTION

Plaintiff Sally Kerans ("Ms. Kerans") filed this lawsuit against Defendant PPG Industries ("PPG") on August 28, 2001 alleging disability discrimination and harassment, gender discrimination, age discrimination, retaliation, and wrongful discharge under federal and state law. On August 19, 2003, Magistrate Judge Sherman issued a Report and Recommendation ("R&R") that (1) PPG's Motion for Summary Judgment be granted in part and denied in part; (2) Ms. Kerans' state law claims be dismissed without prejudice; and (3) the case be closed because no further matters remain pending for review. For the reasons discussed below, Ms. Kerans opposes these recommendations.

## II. ARGUMENT

### A. Standard of Review

When timely objection has been made to a portion or portions of a magistrate's R&R, the district judge must make a *de novo* determination of any portion of the magistrate's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. §§ 636(b)(1). The district court judge may then accept, reject, or modify, in whole or in part, the proposed findings and recommendations. 28 U.S.C. §§ 636(b)(1). The district judge must

independently review the law, the record, and the magistrate judge's report with regard to the objections raised. *Flourney v. Marshall*, 842 F.2d 875, at 878-79 (6th Cir. 1988). Ultimately, the district judge is given the widest discretion to accept, reject, or modify the magistrate judge's proposed findings and recommendations. *Id.*, at 877.

Summary judgment may only be granted if there are no genuine issues of material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 151 (2000). It is well-recognized that when the motivation, intent, or state of mind of the Defendant is at issue, summary judgment in discrimination cases is rarely appropriate. *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001); *see also, Canitia v. Yellow Freight System, Inc.*, 894 F.2d 196, 199 (6th Cir. 1990) (every reasonable and favorable inference should be given to Plaintiff's version or allegations of discriminatory intent); *Gallo v. Prudential Residential Services L.P.*, 22 F.3d 1219 (2d Cir. 1994) (summary judgment is drastic remedy in discrimination cases and should be granted only sparingly).

  B. **The R&R Fails to Consider All Ms. Kerans' Proof of Pretext**.

    1. **Legal Background**

In analyzing the federal benefits discrimination claim, Magistrate Judge Sherman concluded that Ms. Kerans established a prima facie case of discrimination. Ms. Kerans does not object to this recommended ruling. Magistrate Judge Sherman went on, however, to conclude that Ms. Kerans had not established pretext. Ms. Kerans respectfully objects to this recommended ruling because Magistrate Judge Sherman's reasoning fails to account for all of the evidence of pretext upon which Ms. Kerans relies. Because Ms. Kerans has succeeded in establishing a *prima facie* case of ERISA discrimination, PPG must present some legitimate,

nondiscriminatory reason for its actions. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). If PPG meets this burden of production, Ms. Kerans must then show that PPG's articulated reason is a pretext for unlawful discrimination. *Id*. at 507. The employee need not produce *additional* evidence of discrimination. *Id*. As the Supreme Court clarified in *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147-148 (2000), a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification lacks credibility, will permit the trier of fact to infer that the employer was motivated by unlawful discrimination. A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Ms. Kerans is not required to prove that PPG's sole or overriding motivation to terminate her was to interfere with his benefits. Rather, she need only show that a reasonable trier of fact could find that it was "a motivating factor" in the decision. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992).

      The Sixth Circuit has stressed that it is important to analyze all of the evidence of pretext together. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160 (6th Cir)., *reh'g opinion on another issue*, 97 F.3d 833 (6th Cir. 1996). "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 97 (6th Cir. 1982). The Sixth Circuit has stated explicitly that evidence that the articulated reason did not actually motivate the discharge will be sufficient to create a factual question concerning pretext. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (quoting *McNabula v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993). This Court should not accept blindly an employer's proffered reason as honest. *Manzer*, 29 F.3d at 1084.

The Sixth Circuit recently confirmed in an *en banc* decision that the objective reasonableness of an employer's decision is probative of pretext, and that an employer's business judgment is not an absolute defense to unlawful discrimination. *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576 (6th Cir. 2003); *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1988). "[C]ourts should inquire into whether the employer made a *reasonably informed and considered decision* before taking an adverse employment action." *Wexler*, 317 F.3d at 576 (quoting *In re Lewis*, 845 F.2d 624, 633 (6th Cir. 1988). The *Wexler* court overruled the lower court's grant of summary judgment to the defendant-employer, reasoning that the district court had unduly deferred to the employer's business judgment and had ignored inferences of pretext that could be drawn from the unreasonableness of the employer's explanation for the adverse employment action. *Id.*, at 577-78.

### 2. A Genuine Issue of Material Fact Exists as to Whether PPG's Proffered Reasons for Terminating Ms. Kerans are Pretextual.

In the R&R, Magistrate Judge Sherman reasons that Ms. Kerans has not met her burden of production regarding pretext because her "sole argument in support of an inference of pretext is that PPG failed to follow [PPG's] four-step termination procedure." (R&R, p. 10). In fact Ms. Kerans relies on such evidence *in combination with* other evidence. Viewing all of this evidence together easily permits Ms. Kerans to establish pretext.

PPG has claimed that it terminated Ms. Kerans because (1) she was not profitable; (2) she was unable to get along with her coworkers; and (3) customers had complained about her. (R&R, pp. 8-9). Viewing the facts in a light most favorable to Ms. Kerans casts considerable doubt on the legitimacy of this explanation. At bottom, Ms. Kerans worked for PPG for thirty years with no indication that PPG was displeased with any aspect of her performance, juxtaposed against PPG's belated reliance on an allegedly unsatisfactory performance is itself indicative of pretext. *See Hudson v. Insteel Industries, Inc.*, No. 99-6217, 2001 U.S. App. LEXIS 3214 *15 (6th Cir.,

Feb. 23, 2001) (enclosed) ("The jury could have concluded that there were no write-ups or counseling sessions because [the plaintiff's] work performance did not warrant any."). This evidence is especially probative of pretext in light of Zone Manager Mr. Carlson and Regional Sales Manager Donna Wise's testimony that if a PPG employee received neither warnings nor performance reviews, this usually indicated that the employee's performance was satisfactory. (Carlson, 23-24; Wise, 71). [1]

      a.    *Ms. Kerans' benefit level motivated the termination decision.*

In addition to the failure to provide warning to Ms. Kerans for her supposed performance deficiencies, PPG further relies on reasoning for the termination that lacks a factual basis. In the first place, PPG points to alleged deficiencies. However, PPG also concedes the cost of Ms. Kerans' salary and benefits was a direct factor in its decision to terminate her. Although PPG concedes that Ms. Kerans met her sales goal for 2000, it states that her position failed to be profitable in part because of "Plaintiff's salary, overtime, and benefits." (Def. Motion for Summary Judgment, p. 7). Such evidence of PPG's motive is especially telling given that PPG replaced Ms. Kerans with a far less experienced and less profitable decorator who happened to be 33 years younger than Ms. Kerans. (Def. Motion for Summary Judgment, 19; Lindsey, 40). Replacing an employee with a less qualified person squarely evidences pretext. *Zveiter v. Brazilian Nat'l Superintendency*, 833 F. Supp. 1089, *opinion suppl. upon reconsideration*, 841 F. Supp. 111 (S.D.N.Y. 1993) (allowing evidence that new employees with inferior job skills were hired after plaintiff's termination); *Marquez v. Illinois Dep't of Mental Health*, No. 96 C8448, 1999 U.S. Dist. LEXIS 4096 *19-21 (N.D. Ill., Mar. 23, 1999) (enclosed) (evidence that plaintiff's replacement was less qualified than plaintiff supports finding of pretext). As more fully established in Ms. Kerans' Memorandum in Opposition to Summary Judgment, Ms. Kerans

---

[1]     Ms. Lindsey does refer to a performance review that was pulled from Ms. Kerans' personnel file. However, any reliance on this document is questionable at best: Mr. Allen testified that a review would not be pulled from an employee's file unless it was "unnecessary" or "inappropriate." (Allen, 50).

was outperforming Ms. Bammerlin according to the very document upon which PPG purportedly justifies Ms. Kerans' termination. (Combs, 76; Hitchens, 83). *Wexler* supports the notion that this Court may evaluate the reasonableness of PPG's business judgment in determining whether a reasonable inference of pretext exists. *See Wexler*, 317 F.3d 564.

> b. *Ms. Kerans has raised at least a genuine issue of material fact concerning profitability.*

Ms. Kerans has also highlighted significant factual issues with the three reasons cited by PPG for her termination. First, PPG also purports to rely on Ms. Kerans' alleged unprofitability. This reasoning is suspicious on several grounds. PPG management only raised the issue to Ms. Kerans one time – in the course of a decorators meeting wherein Cincinnati Store Group Manager encouraged all of the decorators to increase their sales. (Allen, p. 28-40.) Meanwhile, Ms. Kerans' profit margin remained the same as it had been for years. (Kerans, p. 165.) She has offered ample evidence that she never received discipline or even a performance review during those years, permitting a jury to infer that she could reasonably believe her profitability met PPG's expectations. Moreover, PPG also asserts that Ms. Kerans exceeded her budget to purchase sample books for the store, yet the company itself was responsible for ordering many of the store's sample books, effectively putting the total expenditure beyond Ms. Kerans' control. (Kerans, p. 186).

Ms. Kerans has further offered evidence that her profitability was impacted by the retaliatory actions of Montgomery Store Manager, Jerry Combs. On at least one occasion, he expressed unwillingness to give her credit for a wall covering commission. (Kerans, p. 109). In the only discussion Mr. Combs allegedly had with Ms. Kerans about her profitability, he actually interfered with her efforts to be cost efficient, insisting that she send a sales representative to meet with customers rather than look up information in their files. (Kerans, p. 144-45). Mr. Combs also refused to take messages from Ms. Kerans customers, insisting that she leave customers she was serving or he would tell the person calling she "wasn't interested." (Kerans, p. 148-49).

Finally he instructed her not to speak to painters in the store, which were a sterling source of wall covering referrals. (Kerans, p. 102). At bottom, reliance upon this reasoning is at least suspect.

  c. *Ms. Kerans has raised at least a genuine issue of material fact concerning her ability to get along with co-workers.*

  The unreasonableness of PPG's further explanation that Ms. Kerans was unable to get along with her coworkers is also probative of pretext. Ms. Kerans has provided ample evidence that any reported difficulties were caused, at least in part, by her own supervisor. Ms. Kerans' difficulties stemmed from PPG's unwillingness to accommodate the known limitations a then-undiagnosed medical condition and its failure to address and correct harassment. For instance, when she told Mr. Combs that she was unable to lift heavy objects because of her medical condition, he did not respond, then assigned her new, additional lifting responsibilities. (Kerans, p. 83-84, 69-73). He also instructed other employees not to assist her with lifting duties. (Kerans, p. 100). Ms. Kerans' own coworker testified that he did not dislike her, (Amann, 54), but told Ms. Kerans that he could not be nice to her or help her with lifting because Mr. Combs would be "mad" at him. (Kerans, p. 70, 112). It appears that Mr. Combs, the store manager, was the only "coworker" who complained about Ms Kerans because both of the other employees in Montgomery store never complained about her to management. (Amann, 61; Kalota, 71).

  Ms. Kerans in turn complained about this harassment repeatedly to Ms. Wise and Mr. Allen (who participated directly in the decision to terminate her) and informed them that she could not perform such lifting because of a medical condition she was being tested for and for which she was required to wear a nitroglycerin patch. (Kerans, p. 84, 97-98). Furthermore, Ms. Kerans told Ms. Wise that she did not wish to register anymore complaints about harassment by Mr. Combs and her coworkers because was they were increasingly retaliating against her. (Kerans, 108).

  PPG's assertion that Ms. Kerans was terminated for her inability to get along with the same supervisor and coworkers that were harassing and retaliating against her flies in the face of

reason. If employers are allowed to use an employee's own complaints of discriminatory treatment as justification for taking an adverse employment action, employers would be able to retaliate against a complaining employee with impunity. For this reason, an employer's action or inaction that contributes to an employee's "performance" issue supports an inference of pretext. *See Harrison v. Metropolitan Gov.*, 80 F.3d 1107, 1117 (6th Cir. 1996).

        d.    *Ms. Kerans has raised at least a genuine issue of material fact concerning her allegedly poor customer relations.*

PPG's explanation that Ms. Kerans was terminated for poor customer relations is also suspect. It is uncontested that Ms. Kerans generated a large volume of repeat business. (Hitchins, p. 32). By Mr. Combs' own account, the Montgomery store "lives and dies with repeat customers." (Combs, 51). Based on this evidence, it only stands to reason that Ms. Kerans must have been keeping the customers happy.

In fact, the supposed customer complaints did not begin until Ms. Kerans began reporting to Mr. Combs. Ms. Kerans can establish that Mr. Combs actively interfered with her customer relationships by reassigning customers, pulling her from the sales floor to answer the phone, and refusing to take messages from her customers. (Kerans, pp. 100, 148-49). Ms. Kerans also complained to Ms. Wise and Mr. Allen that Mr. Combs' actions directly interfered with her reputation and credibility with customers and that every time Mr. Combs became involved with her customers they would get upset. (Kerans, p. 100). Thus at least an issue of material fact exists as to whether PPG legitimately terminated her for customer complaints.

        e.    *Ms. Kerans can raise at least a genuine issue of material fact that application of the progressive disciplinary policy was not discretionary.*

Sherman concludes that application of the four-step policy is "discretionary . . . and there is no evidence that plaintiff was treated less favorably than any other employee who was discharged." (R&R, p. 9) (citing to *Gambello v. Time Warner Communications, Inc.*, 186 F. Supp. 2d 209, 233 (E.D.N.Y. 2002).

The Report is accurate in its assertion that an employer's failure to follow its own policies, standing alone, is insufficient to warrant an inference of pretext. However, the cases the Report relies on for the proposition that a plaintiff must prove that a policy was applied unevenly rest on claims of age discrimination are not applicable in this case. The court in *Staojev v. Ebasco* indicated that disparate treatment under an employer's policies points to pretext in age discrimination cases because the "crux" of the claim is that similarly situated younger persons were treated more favorably. 643 F.2d 914, 922-23 (2d Cir. 1981); *see also Time Warner*, 186 F. Supp. 2d 209; *Anderson v. Stauffer Chem. Co.*, 965 F2d 397 (7th Cir. 1992). In comparison, ERISA discrimination may exist even where employee rights to benefits are consistently interfered with. *See Majewski v. v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1113 (6th Cir. 2001). In *Kohls v. Beverly Enterprises*, the court did not address the *per se* insufficiency of failure to follow a policy, but merely declined to reexamine the employer's use of its discretion to apply the policy. 259 F.3d 799, 806 (7th Cir. 2001). The court in *Glover v. Williamsburg* made no "similarly situated" requirement in finding that a school district's failure to follow its own disciplinary policy was probative of pretext. 20 F. Supp 2d 1160, 1174 (S.D. Ohio 1998).

Moreover, Ms. Kerans respectfully disagrees with the R&R's conclusion that she failed to offer comparator evidence. Ms. Hitchins testified that she recalled another decorator with sales volume concerns had received written notice of her performance. (Hitchins, 34). Former store manager Mr. Kalota testified to his belief that the four-step process was to be applied to any employee misconduct. (Kalota, 36). Zone Manager Mr. Carlson's understanding is that an employee normally receives a final written warning as a last chance to improve prior to termination, and that the company has followed this practice in other instances of unsatisfactory performance. (Carlson, 24). The Sixth Circuit has held that inconsistent enforcement of a progressive disciplinary policy may support an inference of pretext. *Harrison*, 80 F.3d at 1117.

In *Giacolletto v. Amax Zinc Co.*, the Seventh Circuit considered evidence that the employer had not followed its own policy in terminating one of its managers. (R&R, 10); *see* 954

F.2d at 427. That case supports a finding of pretext here. In *Giacolletto*, witnesses testified that the employer's policy was never applied to management, yet the court found failure to follow this policy nonetheless supported an inference of pretext because the wording of the policy explicitly included management. *Id.* Here, PPG's own Human Resources Director confirmed that the policy is to be used "where it is believed that its use could reasonably be expected to benefit the employee and the Company in resolving work problems. All four steps in this procedure may not be used for every problem." (Lindsey Dep. Ex. 8, p. 5-1). PPG has supplemented this policy with a table of workplace misconduct that spells out when "leapfrogging" steps in the process is appropriate, outlining examples of dishonest, illegal or unethical conduct that warrant immediate termination. (Combs Dep. Ex. 3). Nowhere does this table refer to inability to get along with coworkers, profitability or customer complaints as a proper basis for "leapfrogging." A fact finder could reasonably interpret the policy as properly allowing discretion merely to skip steps in the policy, not ignore the policy altogether, and that termination without warning is warranted only in specific circumstances that do not exist here. In Ms. Kerans case none of the four steps were followed, save PPG's belated reliance on a warning that had actually been pulled from her file, and her alleged misconduct falls squarely under the kind of performance issues for which the four-step process is intended and required when read in conjunction with the supplemental policy.

For all these reasons, Ms. Kerans has offered more than sufficient facts such that a reasonable finder of fact could find that PPG's proffered reasons are pretextual.

    **C.**    **Dismissal of the State Law Claims is Improper Because This Court Has Diversity Jurisdiction Over the Claims.**

In its own objection to the R&R, PPG concedes that this Court has original diversity jurisdiction over the allegations in this Complaint. (*See* Def. Objections to R&R). The parties are completely diverse and Ms. Kerans seeks damages in excess of $75,000. 28 U.S.C. § 1332 <u>et. seq</u>. PPG is a Delaware corporation with its principal place of business in Pennsylvania and Ms. Kerans is a citizen an resident of the state of Ohio. Ms. Kerans requests leave of this

Court to file the enclosed second amended complaint, which references this Court's original diversity jurisdiction. Ms. Kerans agrees with PPG that it is in the best interests of the parties and the administration of justice for this Court to resolve any claims in this case on the merits.

### III.    CONCLUSION

For all of the foregoing reasons, Ms. Kerans requests that the Court adopt the portion of the R&R that finds that Ms. Kerans has met her burden of proving a *prima facie* case of ERISA discrimination, but decline to adopt the recommendation that summary judgment be granted on the ERISA claim and decline to adopt the recommendation that the Court dismiss Ms. Kerans' state law claims without prejudice.

Respectfully submitted,

/s/ Megan E. Clark

Megan E. Clark (0065159)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street, Fifth Floor
Cincinnati, OH  45202
(513) 721-1975

### CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2003, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system and copies will be mailed via U.S. mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Megan E. Clark

_____